## Case No. 14,368.

### UNION MANUF'G CO. v. LOUNSBURY et al.

[2 Fish. Pat. Cas. 389.] [1]

Circuit Court, D. Connecticut. Sept., 1862.

PATENTS — INTELLECTUAL CONCEPTION — MECHANI-
CAL PROCESS—ACT OF CONGRESS—
REPRESENTATIONS.

1. The intellectual conception of a possible process, without a potential working of it out, is not patentable.

2. If an inventor merely conceives a mechanical process in his mind, and then sets to work to construct a machine to work out that process, and works it out in no other way, and the machine fails to work successfully, then his claim to be the inventor of a process is as groundless as his claim to be the inventor of a machine.

[Cited in Eastern Paper-Bag Co. v. Standard Paper-Bag Co., 30 Fed. 66.]

3. Where certain representations were made to congress, upon the faith of which a patent was extended by special act, the patentee will be held to his representations.

4. The acquiescence or laches of the patentee, is good ground of defense in a court of equity.

This was a bill in equity filed to restrain the defendants [John D. Lounsbury and others] from infringing letters patent for an "improvement in the machines for forming the web of cloth, of wool, hair, or other suitable substance without spinning or weaving," granted to John Arnold July 15, 1829. This patent having expired July 15, 1843, and the inventor having subsequently deceased, the patent and one granted to John Arnold and George G. Bishop October 20, 1836, were extended, by act of congress [5 Stat. 117], for fourteen years from March 28, 1854. The extended patent having been assigned to complainants, was reissued to them March 18, 1856. The disclaimer and claim of the original patent of July 15, 1829, were as follows: "I do not claim, as my invention, the carding machines, or any part thereof, in common use; but I do claim the combined use of them, as here described, for the purpose of crossing the fibers of the material of which cloth may be made; in the manner and on the principle herein described; and the new machinery necessary to effect that object, particularly the comb carrier, the shears, the fallers and cams, with their several appendages, as hereinbefore described and applied; and, therefore, I solicit an exclusive right by letters patent." The claims of the reissued patent of March 18, 1856 [No. 362], were as follows: "What I claim is the combined use of them, as herein described, for the purpose of crossing the fibers of the material of which cloth may be made, in the manner and on the principle herein described, and the new machinery necessary to effect that object, particularly the comb carrier, the means described for severing the weft or web, and the fallers for placing the weft upon the warp, operated

substantially as herein described. I also claim the depositing of the weft in separate sheets, edge to edge, upon the continuous sheet of warp, substantially in the manner and for the purposes described. Stiles Curtis, President."

R. Rowley, C. Hawley, R. J. Ingersoll, C. M. Keller, and B. R. Curtis, for complainants.

R. S. Baldwin, T. B. Butler, and E. W. Stoughton, for defendants.

SHIPMAN, District Judge. In this suit in equity, the complainants seek a perpetual injunction against the respondents. restraining them from infringing a certain patent relating to the manufacture of felt cloth. The patent upon which the bill rests was originally issued to one John Arnold, on July 15, 1829, and purported to secure to him, as his invention, a certain new and useful improvement in the machine for forming the web of cloth, of wool, hair, or other suitable substance, without spinning or weaving. His patent expired by its terms on July 15, 1843. No effort appears to have been made by the inventor to have it extended. He survived the patent nearly five years, and died on May 13, 1848. No application was made, during his lifetime, to have the expired patent revived or renewed, nor is there any evidence in the case that he expected or wished it to be renewed. In January, 1849, about eight months after the death of the inventor, a joint petition was made by George G. Bishop and Peter N. Morgan (the latter being the administrator of the deceased inventor) for the renewal and extension of this patent, and also of another patent which had been granted to the deceased and Bishop, on October 20, 1836. This petition was supported from time to time before a committee of congress with perseverance, and on March 28, 1854, an act was passed reviving and extending both patents for the term of fourteen years from that date.

On April 5, 1854, the revived patent was assigned to the complainants in this bill. They show a title to this, as well as to the patent granted to Arnold and Bishop, and which was also extended by the same act of congress. In January, 1855, the complainants surrendered the patent of 1829. and, on March 18, 1856, received a reissue. It is important, in this place, to distinguish between the original and reissued patents, so far as the scope of the latter is claimed to transcend that of the former. The first clearly describes the invention to be that of a machine, or, to speak more accurately, an organized mechanism for crossing the fibers of the material of which cloth is made in such a way as to produce the same in long or short pieces. This is all that either the specification or claim, or both combined, set forth as the invention. The invention, as

set forth, begins and ends with this organized mechanism. No process is described or hinted at independent of the mere function of the machine, or, at most, the mechanical process wrought by the mechanism. The reissued patent makes a further and distinct claim, as an independent ground of monopoly, namely: "Depositing the weft in separate sheets, edge to edge upon the continuous sheet of warp, substantially in the manner and for the purposes described." This is a claim for the process which, it is insisted, was worked by the original machine. There is no evidence that this process, as it is called, was ever wrought in any other way by Arnold, or conceived of by him as capable of being wrought by any other means than the machine, or organized mechanism, invented by Arnold in 1829.

The bill is founded upon the reissued patent, and it becomes a vital inquiry whether or not this patent is valid. If it is not a valid patent, then the suit fails. If it is valid, and the respondents infringe, then they are liable to be enjoined. I have no doubt on this question. The patent of 1829, both in its original form and in that of the reissue, is invalid, because it did not and does not describe a practical invention. The conceptions of the inventor, in all the forms in which he attempted to reduce them to practice, proved useless and abortive until 1836, when the joint invention of Arnold and Bishop was made. The proof of the utter worthlessness of the invention originally made by Arnold, is to be found in the evidence produced before the court from the files of congress, and upon which that body acted in granting the renewal. This evidence was procured and presented to that body by these complainants, and it presents conclusive proof, to my mind, that the original "invention was incomplete." And, after having obtained an act of congress extending the two patents as "one invention," on the express ground that the first one was no complete invention, within the meaning of the patent act, it is too late for these complainants to set up the contrary fact, and seek, by injunction, to protect that which they have solemnly declared to be worthless. The report of the committee, recommending the passage of the act, says: "No inconvenience can result to the public, or injury to any individual, by the renewal and extension of the first patent, because the invention was imperfect, and a working machine could not be constructed except in connection with what is covered by the second patent." This conclusion of the committee is supported by evidence presented by them, and which has been adduced on this trial. After the legislature has acted upon this conclusion, and passed the statute in question for the benefit of these complainants, by granting them rights adverse to the public and to individuals, it would ill comport with the duty of a court of equity to aid them in

reversing the facts, and thus working the very hardship which they had satisfied congress could never exist.

Should it be said that this conclusion of the court only applies to the machine, and leaves the original process sheltered by the reissue there are several answers. If this process is any thing more than the function of the machine, it is a purely mechanical process wrought by the machine, and by the machine alone.

If no working machine could be made according to the invention of Arnold, then no process was ever successfully invented by him, for there is no evidence that he worked the process except by the machine. The intellectual conception of a possible process, without a potential working of it out, is not patentable.

If an inventor merely conceives a mechanical process in his mind, and then sets to work to construct a machine to work that process, and works it out in no other way, and the machine fails to work successfully, then his claim as the inventor of a process is as groundless as his claim as the inventor of a machine.

Arnold having failed to work this alleged process, except by his machine, both claims to "invention," in the sense of the patent act, fall to the ground.

But if it appeared that Arnold invented a mechanical process that could be distinguished from the function of his machine, and which could furnish a distinct ground of claim for an invention, still there is, in the judgment of the court, an insuperable difficulty in the way of these complainants availing themselves of it.

They represented to congress, in the most solemn manner, that the invention of 1829 was incomplete and worthless of itself, and of no value except in connection with the subsequent invention of 1836. They must, therefore, be deemed to have repudiated any claim to an invention by Arnold of a mechanical process, and to have abandoned it, if any such claim had ever existed in Arnold or themselves. Congress having passed the act for their relief, based upon the faith of these representations, equity and good conscience demand that they should be held to them.

In these remarks the court has assumed, rather than decided, that had Arnold's original machine, or one constructed in conformity to his invention, successfully worked, he might have been entitled to a monopoly of the process wrought, as well as of the machine which wrought it. The court is well aware of the nice questions involved in this assumption, and has, therefore, only regarded it as valid for the purposes of this case.

There are other and grave questions in this case, which are passed over because those already noticed lead to a decisive result. But if those already decided had appeared doubtful, the court would have no hesitation in

holding, from all the facts which appear in evidence, that the respondents acted, or failed to act, so as to protect themselves in the matter of the extension of these patents by congress, under the assurance from these complainants that in no event should their free use of the original invention made by Arnold be interfered with.

This conclusion would be strengthened, if it needed support, by the allegation in the bill that the respondents had openly used it five years, in the immediate neighborhood of the complainants, without legal interference, in connection with the fact that no motion was made for a preliminary injunction after the filing of the bill. This was forcibly urged on the argument as a good ground for the denial of relief in equity, whatever rights the complainants might have at law. This point would have received more consideration had not the others been deemed conclusive. The bill is dismissed, with costs.